AO 91 (Rev. 11/11)  Criminal Complaint

SEALED



# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED

DEC 09 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| EMIL BABADJOV | ) | |
| | ) | 1: 16 MJ  0 0 16 1 SAB |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    January 2016 - December 2016    in the county of    Fresno    in the

Eastern    District of    California    , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sec. 841(a)(1) & (b)(1)(C) | Distribution and Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

See attached Affidavit of John T. Rabaut, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

John T. Rabaut, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/9/2016

_____
*Judge's signature*

City and state:        Fresno, California        Hon. Stanley A. Boone, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF JOHN T. RABAUT IN SUPPORT OF CRIMINAL COMPLAINT

I, John T. Rabaut, being firstly duly sworn, hereby depose and state as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.     I have been employed as a Special Agent with the Drug Enforcement Administration (DEA) since January 2013 and am presently assigned to the Drug Enforcement Administration Resident Office in Fresno, California. I have successfully completed a seventeen (17) week DEA Basic Agent Training Academy at the Drug Enforcement Administration Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to Title 21, United States Code, sections 841 and 846. Additionally, I have discussed with numerous law enforcement officers, defendants, and informants, the methods and practices used by narcotics distributors. I have also been the affiant of previous federal and state search warrants and have testified in court about narcotics.

2.     Further, I have completed various training programs provided by the DEA and local law enforcement agencies, including, but not limited to training on identifying characteristics associated with the manufacture, sale, and transportation of various narcotics, including, but not limited to phencyclidine (PCP), methamphetamine, heroin, cocaine, and marijuana. These training programs involved the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances as well as its precursors and chemicals used in the manufacturing process. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking. I have assisted on the execution of several federal and state narcotics search warrants that resulted in the arrest of suspects and seizure of narcotics.

3.     I have participated in other narcotics investigations, either as a case agent or in a

1

supporting role.  I also have debriefed defendants, informants, and witnesses who had personal

knowledge regarding narcotics trafficking organizations.  Additionally, I have participated in

many other aspects of drug investigations including, but not limited to, undercover operations,

conducting physical and electronic surveillance, and arrests.  These investigations have included

the unlawful manufacture, possession, distribution, and transportation of controlled substances,

as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States

Code, sections 841(a)(1), 841(c)(2), 843, and 846, along analogous sections of the State of

California Health and Safety Code.

      4.     The information contained in this Affidavit is submitted for the sole purpose of

demonstrating probable cause to obtain a criminal complaint charging **Emil BABADJOV** with

violations of Title 21, United States Code, Sections 841(a)(1) & & (b)(1)(C) (Distribution and

Possession with Intent to Distribute a Controlled Substance (Heroin)).  Because this Affidavit is

being submitted for the limited purpose of demonstrating probable cause, it does not contain all

of the information known to me and/or other law enforcement officers involved in this case.

## II.    <u>BACKGROUND ON DIGITAL CURRENCY</u>

      5.     Digital currency (also known as crypto-currency) is generally defined as an

electronic-sourced unit of value that can be used as a substitute for fiat currency (i.e. currency

created and regulated by a government).  Digital currency exists entirely on the Internet and is

not stored in any physical form.  Digital currency is not issued by any government, bank, or

company and is instead generated and controlled through computer software operating on a

decentralized peer-to-peer network.  Digital currency is not illegal in the United States and may

be used for legitimate financial transactions.  However, digital currency is often used for

conducting illegal transactions, such as the sale of controlled substances.

6.     Bitcoin is a type of digital currency. Bitcoin payments are recorded in a public ledger that is maintained by peer-to-peer verification, and is thus not maintained by a single administrator or entity. Individuals can acquire bitcoins either by "mining" or by purchasing bitcoins from other individuals. An individual can "mine" for bitcoins by allowing his/her computing power to verify and record the Bitcoin payments into a public ledger. Individuals are rewarded for this by being given newly created bitcoins.

7.     An individual can send and receive bitcoins through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be done on any type of computer, including laptop computers and smart phones.

8.     Bitcoins are stored on digital "wallets." A digital wallet essentially stores the access code that allows an individual to conduct bitcoin transactions on the public ledger. To access bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address can be analogized to an account number while the private key is like the password to access that account.

9.     Even though the public addresses of those engaging in bitcoin transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity is linked to a public address, it would be possible to determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," meaning they are partially anonymous.

10.     Through the dark-web or dark-net, i.e. websites accessible only through encrypted means, individuals have established online marketplaces, such as AlphaBay, for narcotics and other illegal items. AlphaBay is a dark website operated as a TOR hidden service. AlphaBay

3

allows its users to browse anonymously to purchase a variety of illegal goods, including controlled substances. Bitcoin was the form of payment accepted by the site.

11.     These markets often only accept payment through digital currencies, such as bitcoin. Accordingly, a large amount of bitcoin sales or purchases by an individual is often an indicator that the individual is involved in narcotics trafficking or the distribution of other illegal items. Individuals intending to purchase illegal items on AlphaBay-like websites need to purchase or barter for bitcoins. Further, individuals who have received bitcoin as proceeds of illegal sales on AlphaBay-like websites need to sell their bitcoin to convert them to fiat (government-backed) currency. Such purchases and sales are often facilitated by peer-to-peer bitcoin exchangers who advertise their services on websites designed to facilitate such transactions.

12.     Dark websites, such as AlphaBay, operated on "The Onion Router" or "TOR" network. The TOR network ("TOR") is a special network of computers on the Internet, distributed around the world, that is designed to conceal the true Internet Protocol ("IP") addresses of the computers accessing the network, and, thereby, the locations and identities of the network's users. TOR likewise enables websites to operate on the network in a way that conceals the true IP addresses of the computer servers hosting the websites, which are referred to as "hidden services" on the TOR network. Such "hidden services" operating on TOR have complex web addresses, generated by a computer algorithm, ending in ".onion" and can only be accessed through specific web browser software designed to access the TOR network.

///

///

///

4

### III.   FACTS ESTABLISHING PROBABLE CAUSE

### A.   *Drug Enforcement Administration (DEA) Identifies Emil BABADJOV as a Heroin and Fentanyl Distributor*

13.     Based on my review of public and law enforcement records, I know that **Emil BABADJOV** is a 24-year old male who was born in Bulgaria and is a United States citizen.  He is approximately 5'.10" and 180 pounds with black hair and brown eyes.

14.     I am part of a dark web/digital currency task force focused on identifying narcotics vendors operating on the dark web and using dark marketplaces (like AlphaBay) to advertise and sell narcotics.  As part of this task force, I have been trained by various law enforcement agencies about how to operate an undercover dark marketplace accounts and, acting in an undercover capacity, purchase narcotics on these market places, which includes how to encrypt messages utilizing Pretty Good Privacy (PGP) keys and how to purchase and use digital currency (such as Bitcoins) to make payments for narcotics.  As a result of this training, I began analyzing and investigating the top heroin vendors operating on the dark marketplace, AlphaBay, in January of 2016.  Through the course of my initial investigation, I came across two vendors, "BTH-OVERDOSE" and "BLIME-SUB," who were advertising heroin, fentanyl, and methamphetamine.

15.     In approximately September of 2016, I initiated a full investigation into BLIME-SUB and BTH-OVERDOSE.  Popular dark market online forums indicated that customers for both BLIME-SUB and BTH-OVERDOSE received parcels originating from the West Coast, possibly somewhere in California.  According to vendor profiles on AlphaBay, "BLIME-SUB" has conducted approximately 1,705 narcotics transactions and "BTH-OVERDOSE" has conducted approximately 90 transactions.

16.     My initial analysis of BTH-OVERDOSE's public PGP key indicated that this key was registered to Babadjov@***.com.  A social media search for Babadjov@***.com resulted in the discovery of a Facebook account belonging to someone identified as "Lime Vojabab."

5

Importantly, the reverse order of these letters spells out "Emil Babajov." Additionally, the Facebook search returned a public post made by **Emil BABADJOV** on September 19, 2015, indicating that people could email **BABADJOV** at Babadjov@***.com (the same email address referenced above).

17.    On November 14, 2016, I submitted an administrative subpoena to the Bitcoin exchange company Coinbase for any information that they might have on Babadjov@***.com. On November 14 and 15, 2016, I received the results from Coinbase regarding this administrative subpoena. According to Coinbase, the email address of Babadjov@***.com was used on November 13, 2015, at approximately 4:58 PM, to establish a Coinbase account for **Emil BABADJOV**. A subsequent search through Coinbase for **Emil BABADJOV** indicated that on March 18, 2016, at approximately 3:42 PM, **BABADJOV** attempted to establish a Coinbase account using the email address of Blimesub@***.com. As detailed more fully below, I later purchased approximately three grams of heroin from an Alpha Bay vendor named BLIME-SUB (though the actual narcotic delivered turned out to be both heroin and Fentanyl).

18.    A Lexus Nexus search for **Emil BABADJOV** in California indicated that there was an **Emil BABADJOV** living in San Francisco, CA. On November 14, 2016, I obtained a California Driver License photo of **BABADJOV**, which listed the address of 888 O'Farrell Street, #W810, San Francisco, CA 94109. Also a subsequent criminal history search for **BABADJOV** revealed a prior 2013 arrest for possession of a controlled substance. This charge was later dismissed in 2014.

### B.    *BABADJOV Sells Heroin and Fentanyl on AlphaBay*

19.    On October 19, 2016, I obtained approximately $800 worth of Bitcoins to be used in purchasing three grams of heroin from BLIME-SUB on AlphaBay.

20.    On October 20, 2016, acting in an undercover capacity, I logged into my undercover Alpha Bay account and purchased approximately three gram of heroin from BLIME-SUB for approximately $480 worth of Bitcoin. I included a message to BLIME-SUB to send the package to a predetermined undercover address within the Eastern District of California and to

address the parcel to a predetermined undercover name.

21.     On October 25, 2016, I received notice from US Postal Inspector Jessica Burger that a parcel had arrived at the undercover address I provided to BLIME-SUB. The parcel was also addressed to the undercover name that I provided to BLIME-SUB.

22.     On that same day, I retrieved the package from Inspector Burger and noticed that the return address of this package was 2085 Van Ness Ave, San Francisco, CA 94109.  The tracking number for this parcel was identified as "EL480218107US" (hereafter referred to as "UC PARCEL #1")

23.     I brought UC PARCEL #1 back to the Fresno Resident Office to open it and to begin processing it into evidence.  I, as witnessed by DEA SA Jay Dial, opened UC PARCEL #1 and located a black Mylar envelope inside the parcel.  Inside of the black Mylar envelope were several small clear zip lock bags that contained a white powder.  I, as witnessed by SA Jay Dial, conducted a presumptive test on the powder, which tested positive for the presence of heroin.  I submitted all of the contents of UC PARCEL #1 to the DEA Western Regional Lab for fingerprint and drug analysis.

24.     On November 10, 2016, I received notice from the Western Regional Lab that the white powder from UC PARCEL #1 did test positive for heroin but that most of the powder was actually Fentanyl.  As background, Fentanyl is an opioid chemical that heroin dealers sometimes lace in heroin.  In terms of potency, Fentanyl is generally 4-5 times stronger than Heroin.  As a result, it is very easy for heroin uses to inadvertently overdose as a result of the heroin being laced with Fentanyl.

### C.  *BABADJOV Purchase Postage for UC PARCEL #1*

25.     As a result of the undercover purchases I conducted, Inspector Burger was able to conduct comparative analysis of these parcels to identify who purchased the postage for UC PARCEL #1.

26.     Inspector Burger was able to identify the time, date, and location the postage was purchased via the Postage Validation Imprinter (PVI) label.  According Inspector Burger, the

postage for UC PARCEL #1 was purchased via a Self-Service Kiosk (SSK) located at the Macy's Station U.S. Post Office, located at 170 O'Farrell Street, San Francisco, CA 94102, which is approximately 0.7 miles from **BABADJOV**'s known address.  The postage was purchased on September 18, 2016 at approximately 4:03 PM PST.

27.    Because SSK transactions are not face-to-face transactions, the SSK system takes photos of the person making the transaction.  Inspector Burger retrieved the photo of the suspect who purchased the postage for UC PARCEL #1 and provided the photo to me.  I positively identified the individual in the photo as **Emil BABADJOV** based on my review of his California Driver License photo and social media photos.

28.    On November 16, 2016, I received notification from the Western Regional Lab that the fingerprint analysis for UC PARCEL #1 was complete.  According to Senior Fingerprint Specialist Michael Hall, two fingerprints were discovered on the exterior of UC PARCEL #1. Both of these fingerprints were a match for **BABADJOV**.

29.    As of the date of this Affidavit, the ongoing investigation has been covert and I therefore believe that **BABADJOV** is unaware of the ongoing investigation.

///

///

///

///

///

///

///

///

///

///

///

///

8

## IV.   **CONCLUSION**

30.     Based upon my training and experience, and on the facts set forth in this affidavit, there is probable cause to believe that **Emil BABADJOV** has violated Title 21, United States Code, Sections 841(a)(1) & (b)(1)(C) (Distribution of Controlled Substances).  I therefore request that you issue the attached arrest warrant and criminal complaint.

*Approved as to form*:

/s/ Grant B. Rabenn
Grant B. Rabenn
Assistant United States Attorney

John T. Rabaut
Special Agent
Drug Enforcement Administration

Sworn to before me this
_____ day of December 2016

HON. STANLEY A. BOONE
United States Magistrate Judge
Eastern District of California

9