#23950

USP-Compoc
3901 Klein Blvd
Lompoc, CA
93436

IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

FILED

MAY 18 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br><br><br>EMIL BABADJOV,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 1:16-cr-204-LJO

## BABADJOV'S EMERGENCY MOTION
## FOR COMPASSIONATE RELEASE

COMES NOW, Emil Babadjov, and respectfully moves this Honorable Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act (P.L. 115-391), for modification of his sentence so that he may be placed in home confinement for the remainder of his sentence or that he may be released on compassionate release.

In light of the COVID-19 crisis that is currently impacting federal prisons across the country, Mr. Babadjov makes this request for modification of sentence to home confinement or compassionate release. As a prison inmate at Lompoc, Mr. Babadjov is extremely vulnerable to contracting COVID-19. The COVID-19 time bomb ticking inside the Lompoc prison complex since late March detonated in dramatic fashion this week as the federal facility confirmed *912* open cases among inmates and 25 cases among staff. The outbreak remains the largest in any federal prison in the United States. The rest of Santa Barbara County has reported *475*

*total* positive cases.[1]

In spite of best efforts by the Bureau of Prisons to maintain a safe environment for inmates like Babadjov, a public health crisis of epic proportions is raging inside our nation's prisons. Throughout facilities operated by the Federal Bureau of Prisons, *forty-eight* people have now died, and the infection rate is *6.5 times higher* than the overall average infection rate in the U.S.[2] COVID-19 has now killed more prisoners in weeks than the U.S. death penalty has in more than a decade.[3]

The Bureau of Prisons lacks the ability to keep Babadjov safe. Every week there are new reports of COVID-19 outbreaks in federal prisons. *See, e.g.*, Caroline Habetz, *Sixth Inmate at Oakdale Federal Prison Dies from Coronavirus*, KPLC (Apr. 10, 2020); Kaylyn Hlvaty, *6th Inmate at Elkton Federal Correctional Institutes Dies from COVID-19*, NEWS 5 CLEVELAND (Apr. 16, 2020); Scott Gordon, *COVID-19 Cases Nearly Quadruple Inside Fort Worth Federal Medical Prison*, NBC-DFW (Apr. 23, 2020); Walter Pavlo, *Bureau of Prisons Had a Response Plan for a Pandemic But Delayed Action*, FORBES (Apr. 23, 2020) ("As of April 23, the BOP has reported 620 COVID-19 positive inmates and 357 staff members—inmate cases have doubled in the last two weeks, staff's have tripled. There have been 24 inmate deaths. The

---

[1] Available at https://www.independent.com/2020/05/13/lompoc-prison-explodes-with-active-covid-19-cases/.
[2] *See* https://www.fd.org/sites/default/files/cja_resources/2020.05.11_letter_from_fd_to_congress.pdf.
[3] *See* Douglas A. Berman, *The new death penalty: COVID has now killed more US prisoners in weeks than the US death penalty has in more than a decade*, Sentencing Law & Policy (May 11, 2020) available at https://sentencing.typepad.com/sentencing_law_and_policy/2020/05/the-new-death-penalty-covid-has-now-killed-more-us-prisoners-in-ten-weeks-that-the-us-death-penalty-.html.

BOP also tracks recovery from COVID-19, stating that 302 inmates and 53 staff have recovered.").

Just a few weeks ago, a BOP official sent Senator John Cornyn a whistleblower complaint, in which she alleged that the BOP "knowingly misleads" the public about BOP's COVID-19 response. *See* Keegan Hamilton, *Whistleblower Warned of Coronavirus Danger in Prison Where a Woman Just Died After Giving Birth*, VICE (Apr. 29, 2020) ("Documents obtained by VICE News show that staff at the Federal Medical Center in Carswell, Texas, had filed a whistleblower complaint with a U.S. senator a week after Circle Bear gave birth, alleging that the Bureau of Prisons 'knowingly misleads the American public' about conditions in federal prisons. The complaint warned that the BOP was taking a 'cavalier approach' to quarantine that put staff and inmates at risk of contracting the coronavirus."). The government has not responded to these allegations, and they at least pose the question whether Babadjov is at significant risk with every day he spends in federal custody. The dangers presented by COVID-19 to Babadjov clearly warrant expedited consideration.

## I.       Facts and Procedural History.

Babadjov was convicted of distributing a controlled substance and sentenced to 70 months' imprisonment (Dkt. No. 39). He did not appeal.

Babadjov recently filed a petition for writ of habeas corpus in the district of confinement based on the dangers posed by COVID-19. *See Babadjov v. Acting*

*Warden*, No. 2:20-cv-03666 (C.D. Apr. 21, 2020). Babadjov's petition was dismissed,

however, and he was instructed to seek relief in this Court:

> Petitioner Emil Vladimir Babadjov is a federal inmate convicted
> and sentenced for narcotics offenses in the District Court for the
> Eastern District of California. *See United States v. Babadjov,* Case
> No. 1:16-cr-204-LJO (E.D. Cal.). He is in the custody of the federal
> Bureau of Prisons in this district with about ten months left to
> serve on his 70-month sentence. (ECF 1 at 16). In a petition filed
> under 28 U.S.C. § 2241, along with an amended motion for
> emergency injunctive relief (ECF 7), Petitioner seeks release from
> BOP custody under 18 U.S.C. § 3582(c)(l)-commonly called
> "compassionate release"-based on the COVID-19 pandemic. But
> Petitioner has directed his request to the wrong court and mistaken
> his legal basis for potential relief. Compassionate release requests
> under§ 3582(c)(l) must be filed in the original sentencing court.

*Id.* According to the BOP, Babadjov's release date is February 12, 2021.[4] He files

the instant motion with the hope that the remaining *9 months* of his sentence for

non-violent drug offenses does not become a *death sentence*.

## II.      Exhaustion of Administrative Remedies.

In this instance, Mr. Babadjov asks the Court to waive the exhaustion

requirement within the Bureau of Prisons ("BOP").[5] Although typically the

defendant is required to exhaust administrative remedies with the BOP, courts

have recognized that the exhaustion requirement may be waived given the extreme

immediacy of the need to seek judicial relief in these circumstances. *See United*

*States v. Sawicz*, No. 08-cr-287 (ARR), 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020);

*United States v. Almonte*, No. 3:05-cr-58 (SRU), 2020 WL 1812713 (D. Conn. Apr. 9,

2020); *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084 (E.D. Mich. Apr.

---

[4] Available at https://www.bop.gov/inmateloc/.
[5] Babadjov has requested compassionate release from prison officials. BOP, however, has not yet responded to his request. *See* Attached Letter.

9, 2020); *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732 (D.

Conn. Apr. 8, 2020); *United States v. Brannan*, No. 4:15-CR-80-01 (S.D. Tex. Apr. 2,

2020); *US v. Perez*, No. 17 Cr. 513-3 (AT) (S.D.N.Y. Apr. 1, 2020).

## III.   Extraordinary and Compelling Circumstances Warrant the Granting of this Motion.

Pursuant to 18 U.S.C. § 3582, a court may modify a term of imprisonment

where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C.

§ 3582(c)(1)(A). The U.S Sentencing Commission has defined "extraordinary and

compelling reasons" in the U.S. Sentencing Guideline § 1B1.13. "Extraordinary and

compelling reasons" for modification exist where "[t]he defendant is . . . suffering

from a serious physical or medical condition . . . that substantially diminishes the

ability to provide self-care within the environment of a correctional facility and from

which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt., n.1(A)(ii).

District courts across the country have recognized that ordering release or home

confinement pursuant to 18 U.S.C. § 3582 is warranted when an inmate is faced

with continued incarceration during this COVID-19 health crisis.[6]

---

[6] *See United States v. Williams*, No. 04-cr-95, Dkt. No. 91 (N.D. Fla. April 1, 2020) (granting § 3582(c)(1)(A)(i) motion "in light of [the defendant's] serious deterioration in physical health and the increasing health risks that the current global pandemic of coronavirus (COVID-19) poses to incarcerated persons, particularly those with underlying health conditions."); *United States v. Gonzales*, No. 18-cr-0232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) ("Defendant is the most susceptible to the devastating effects of COVID-19. She is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable . . . The Court was aware of Defendant's underlying medical condition and took that into consideration at the time of sentencing. In normal times, Defendant's condition would be manageable. These are not normal times, however."); *United States v. Marin*, No. 15-cr-252, Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020) (granting § 3582(c)(1)(A)(i) motion based on defendant's "advanced age, significantly deteriorating health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as a non-violent offender, and service of 80% of his original sentence."); *United States v. Muniz*, No. 09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) (releasing defendant serving 188-month sentence for

As the Court is well-aware, the coronavirus pandemic is a global crisis that is, in particular, causing death and illness within the prison system due to the impossibility of social distancing and preventative measures, and the difficulties in receiving adequate medical treatment. The Court did not impose a death sentence on Mr. Babadjov.

In sum, as a federal inmate, Mr. Babadjov is at higher risk of both catching COVID-19 and suffering from severe illness or dying as a result. Thus, Mr. Babadjov is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt., n.1(A)(ii). These medical conditions and their resulting risk of severe illness or death in the BOP today comprise "extraordinary and compelling reasons" warranting the modification of Mr. Babadjov's sentence to home confinement or compassionate release.

## IV.      Compassionate Release is Consistent with Sentencing Commission Policy.

When considering a sentencing modification request, the Court must consider the sentencing factors of 18 U.S.C. § 3553(a) and must also find that a sentence

---

drug conspiracy in light of vulnerability to COVID-19: "[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers within the United States and beyond our borders in China and Iran demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection."); *United States v. Powell*, No. 94-cr-00316 (D.D.C. Mar. 28, 2020) (granting § 3582(c)(1)(A)(i) motion in light of COVID-19 pandemic for a "[d]efendant [who] is 55-years-old, suffers from several respiratory problems (including sleep apnea and asthma), and has only 3 months remaining on his 262-month sentence."); *United States v. Campagna*, No. 16-cr-78-01, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence . . . .").

modification is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The requirement that the sentence modification be consistent with U.S. Sentencing Commission policy "is essentially already met if 'extraordinary and compelling reasons' exist as defined by that policy." *United States v. Ebbers*, 2020WL91399, at *6 (S.D.N.Y. Jan. 8, 2020). "The only remaining consideration is the policy statement's requirement that the 'defendant is not a danger to the safety of any other person or to the community.'" *Id.*

Here, as described above, Mr. Babadjov meets the definition of extraordinary and compelling circumstances due to the unprecedented health crisis facing the federal prison system. Therefore, the Court must next consider whether Mr. Babadjov poses a danger to the safety of the community. Upon consideration of the safety risk of releasing Mr. Babadjov and the applicable sentencing factors, it is evident that the release of Mr. Babadjov is consistent with these factors and policies.

First, Mr. Babadjov has completed Residential Drug Abuse Program (RDAP). (*See* Individualized Reentry Plan, Program Review.). He is a first-time non-violent offender, who's made significant strides at rehabilitation. *See* Letter of Chief Judge Lawrence O'Neil (June 11, 2018) ("I am thrilled that it appears [Emil] is on the right track.").[7]

Second, Mr. Babadjov has a stable and well-supported release plan. Babadjov will be releasing to his mother's residence: 9444 Haines Cyn. Avenue, Tujunga CA,

---

[7] A copy of Judge O'Neill's letter has been attached hereto.

91042. Babadjov will have access to a large home that will allow him to shelter in place and practice social distancing mandated by public health experts.

In sum, Mr. Babadjov is a nonviolent offender who has a viable release plan that includes a stable residence. Babadjov was a young man with no prior convictions at the time these offenses were committed. Serving more than three and a half years in custody remains sufficient to accomplish the statutory purposes of sentencing. Reducing Babadjov's sentence to time served would remain a deterrent.

For these reasons, releasing Mr. Babadjov on compassionate release or to serve the remainder of his sentence in home confinement would be consistent with the sentencing factors of 18 U.S.C. § 3553(a) and U.S. Sentencing Commission guidance.

## IV.        Conclusion.

In light of the aforementioned qualifications for modification of sentence, Mr. Babadjov respectfully requests that this Court immediately modify his sentence so that the remaining portion of the sentence may be served in home confinement or immediately sentence him to time-served as the date of this motion so that he may be compassionately released.

Dated: May _16_, 2020

Respectfully Submitted,

_Emil Babadjov_  POA MB

Emil Vladimir Babadjov
Reg. No. 23950-111
USP Lompoc
3901 Klein Blvd
Lompoc, CA 93436

### CERTIFICATE

I hereby certify that I have placed a true and correct copy of the foregoing in

the U.S. Mail first class postage prepaid and properly addressed to the following on

this _16_ day of May, 2020:

United States Attorney's Office
Robert E. Coyle United States Courthouse
2500 Tulare Street, Suite. 4401
Fresno, CA 93721

_Emil Babadjov_  POA MB

Emil Vladimir Babadjov
Reg. No. 23950-111
USP Lompoc
3901 Klein Blvd
Lompoc, CA 93436

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

2500 Tulare Street
Room 1501
Fresno, CA 93721

**LAWRENCE J. O'NEILL**
Chief United States District Judge



**Tel:** 559-499-5680
**Fax:** 559-499-5959
**Calendaring:** 559-499-5682

June 11, 2018

Vladimir and Mariana Babajov
9444 Haines Canyon Ave.
Tujunga, CA 91042-3308

Dear Mr. and Mrs. Babajov:

  I have received your letter of May 24, 2018, regarding Emil.  I am thrilled that it appears your son is on the right track.

       Best Regards,

       Lawrence J. O'Neill
       Chief District Judge

 Gmail

**Mariana B <marianaoff@gmail.com>**

---

## Re: COVID-19 in Lompoc, my son Emil V Babadjov, Register# 23950-111

2 messages

---

**LOX/Exec Assistant~** <LOX/ExecAssistant@bop.gov>                 Wed, May 13, 2020 at 7:43 AM
To: Mariana B <marianaoff@gmail.com>

Good Morning -

This is in response to your email sent to Freedom of Information which was sent to this office for response.
Your request for Compassionate Release was received and was forwarded to the appropriate department for review
and consideration.

Thank you and stay healthy

>>> Mariana B <marianaoff@gmail.com> 5/12/2020 1:23 PM >>>
To Whom It May Concern:

I am the mother of Emil V Babadjov, Register# 23950-111. My name is Mariana Babadjov. I would like to plead for
home confinement for my son due to the above 70% positive COVID-19 cases in Lompoc and do need directions on
how to handle that. I do have POA from my son. I referred to bop.gov, where I found the following:
**The Bureau of Prisons processes a request made by another person on behalf of an inmate in the same
manner as an inmate's request. Staff shall refer a request received at the Central Office to the Warden of the
institution where the inmate is confined.**

Please let me know if the attached document I have prepared would suffice, and if this is the right e-mail address to
send my request to.

Looking forward to hearing from you,

Mariana Babadjov

---

**Mariana B <marianaoff@gmail.com>**                 Wed, May 13, 2020 at 8:16 AM
To: Val Babajov <val@voivoda.com>

[Quoted text hidden]

May   12, 2020

ATTN:
**Federal Bureau of Prisons**
**320 First St., NW**
**Washington, DC 20534**

Acting Warden
USP LOMPOC
3901 Klein Blvd
Lompoc, CA 93436

RE: Emil V. Babadjov, Register# 23950-111 Compassionate Release Request

To Whom It May Concern:

My name is Emil V. Babadjov and I am presently an inmate at USP Lompoc.
I am respectfully requesting immediate release based upon the provisions of 18 U.S.C. § 3582.

If the Court grants my request, I will live at home with my mother Mariana Babadjov, the address on file with the
U.S. Probation Office. See declaration of Mariana Babadjov, attached here too. The location was routinely
approved for visitation by the U.S. Probation Office as part of his compliance with applicable pre-trial release
provisions. My risk of COVID-19 transmission is significantly reduced if I were to transfer to live with my family,
in a single-family residence. It is far safer than if I were to remain confined in a facility of above 1,000 inmates, plus
BOP support staff, with above 70% positive COVID-19 cases.

Further, I would be residing near a physician capable of rending immediate care of me. It is undisputed that the
conditions under which I would be confined upon release would present a lower risk of contracting COVID-19 than
I face in my current BOP facility.

I will have health and dental insurance immediately upon my release in the event that the Bureau of Prisons transfers
me to home confinement. My parents will provide necessary financial support through the home confinement
period, and I will be able to help my senior parents with my bedridden 90 year old grandmother. I will only be
permitted to leave the confines of the residence to seek medical care if needed. The Court may also impose
additional restrictions such as electronic monitoring, which I will pay for at my own expense.

I look forward to your response at your earliest opportunity.

Thank you for your assistance.

Sincerely,

*Emil Babadjov*          *POA MB*
—————————————
Emil V. Babadjov

SWORN DECLARATION OF Mariana Babadjov

PURSUANT TO 28 U.S.C. SECTION 1746

1. I am Emil Vladimir Babadjov's mother.

2. Should this honorable grant my son's request for immediate release pursuant to 28 U.S.C. section 1746 he will reside at my residence located at 9444 Haines Cyn. Ave., Tujunga, CA 91042.

3. This residential location satisfies all requirements for home detention as required by the United States Probation Office, officer A.Barahona, and in accordance with my son's supervised release conditions.

4. My son will be far less susceptible to the coronavirus living at home than if he were to remain in federal prison. While at home, he will not be exposed to the contaminated environment of a federal prison, where hundreds of people reside, and where staff members come and go each day. At home, we have appropriate cleaning solvents, masks, hand sanitizers, and we practice social distancing, as advised by the Center for Disease Control. Also, we do need him to help with my elderly bedridden mother since we have physical limitations.

I declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on _May 12, 2020_ .

Mariana Babadjov
Declarant