UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

EMIL VLADIMIROV BABADJOV,

Defendant.

No. 1:16-cr-00204-NONE-SKO

ORDER DENYING DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE

(Doc. No. 40, 43)

Pending before the court is defendant Emil Vladimirov Babadjov's motion compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), in addition to his supplemental opening brief. The motion is largely based on defendant's medical condition and the risks posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. Nos. 40; 43 at 14–26.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On December 15, 2016, defendant Babadjov was charged by way of indictment with distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(C). (Doc. No. 7.) On October 23, 2017, defendant pleaded guilty to the sole count charged against him in the indictment. (Doc. No. 34 at 2.) Under the U.S. Sentencing Guidelines, it was determined that defendant Babadjov's adjusted offense level was 27 and his criminal history category was I, resulting in an advisory sentencing guideline range calling for a sentence of between 70 and 87

months imprisonment. (Doc. No. 36 (Presentence Report) at 17.) On January 16, 2018, the court sentenced defendant to a 70–month term of imprisonment, the low end of the guideline range, with a 36-month term of supervised release to follow. (Doc. No. 39 at 2–3.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Lompoc United States Penitentiary in Lompoc, California ("USP Lompoc"). (Doc. No. 40 at 1.) On May 18, 2020, defendant, appearing pro se, filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 40.) On May 22, 2020 the court referred defendant's motion to the Office of the Federal Defender and on June 26, 2020, that office filed a supplemental opening brief on his behalf. (Doc. No. 43.) On July 6, 2020, the government filed its opposition to the motion, and on July 13, 2020, defendant's counsel filed a reply thereto. (Doc. Nos. 48, 53.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a

/////

/////

/////

/////

> motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United*

---

released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

*States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A. Administrative Exhaustion**

Defendant submitted a request for compassionate release to the Warden at USP Lompoc on May 12, 2020. (Doc. No. 40 at 11–13.) The next day, defendant received a denial from the Warden. (Doc. No. 43-2 at 2.) Defendant argues exhaustion is satisfied here because "more than 30 days have passed since" submitting his request. (Doc. No. 43 at 12.) Because his request was denied within 30 days, defendant is required to appeal his denial to the BOP's Regional Director pursuant to 28 C.F.R. § 542.15(a). *See supra note* 1. Nonetheless, the government has conceded that exhaustion is satisfied here. (Doc. No. 48 at 10.) Accordingly, below the court will address the merits of the pending motion.

/////

/////

**B. Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g., United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g., United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably

extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Babadjov argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical condition. Defendant is now only 36 years old. (Doc. No. 36 (Presentence Report) at 2.) At the time of sentencing, it was noted that defendant was 5'9" and weighed 200 pounds, underwent an appendectomy at the age of 12, suffered from sciatic nerve pain as a result of a skateboarding accident, had cellulitis, and suffered from opioid withdrawals. (*Id.* at 10.) In support of his compassionate release motion, defendant argues that his obesity and prior substance abuse place him at greater risk of becoming severely ill were he to contract COVID-19. (Doc. No. 43 at 17.) With respect to defendant's obesity, in his motion he asserts that he weighs "approximately 205 to 210 lbs," citing in support of that contention his counsel's declaration averring that defendant weighed himself several times at the beginning of 2020. (Doc. No. 43-1 ¶ 7.) According to the most recent BOP medical records before the court, defendant was last reported in October 2018 as weighing 197 pounds. (Doc. No. 52 at 17 (sealed).)

Giving defendant the benefit the doubt, and using his highest documented weight, defendant's BMI is 29.5. *Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_

calculator/bmi_calculator.html (last visited Sept. 7, 2020). According to the U.S. Centers for Disease Control and Prevention ("CDC"), individuals with a BMI over 30 or higher are deemed to be at a heightened risk from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 7, 2020). Defendant's weight falls just short of that at-risk threshold.[4] Additionally, defendant's past substance abuse does not place him at greater risk of contracting a severe illness from COVID-19 according to the CDC. *Id.* (recognizing former cigarette smokers "might be at an increased risk for severe illness from COVID-19"). In short, based on the medical conditions defendant Babadjov claims to suffer from, the court cannot conclude that he is at higher risk for contracting a severe illness from COVID-19.

Having made this finding, it also cannot be said that defendant is "suffering from a serious physical . . . condition . . . that substantially diminishes [his] ability . . . to provide self-care" at USP Lompoc and "from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). In addition, defendant has not carried his burden of demonstrating that he is significantly hindered in providing "self-care" at USP Lompoc. *See id.* It is true that early on USP Lompoc suffered a significant outbreak with 162 inmates and 24 staff having tested positive for COVID-19 and recovering, with two inmate deaths as a result of the virus. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Sept. 7, 2020).[5] At

/////

/////

/////

---

4 If defendant actually weighs 205 pounds, his BMI would be above 30. *Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Sept. 7, 2020). However, there is no medical evidence before the court establishing that defendant weighs more than 200 pounds. Moreover, even if defendant Babadjov was in a risk category as a result of his weight, that alone would not justify his compassionate release.

5 USP Lompoc houses 864 inmates. *USP Lompoc*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lom/ (last visited Sept. 7, 2020).

the moment, three inmates and two staff currently have the virus.[6] *Id.* However, to the extent defendant relies on COVID-19 as a basis for compassionate release, his risk from the virus is speculative at this time.

Therefore, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to §3582(c)(1)(A) in this case.

**C. Consistency With the § 3553(a) Factors**

Because the pending motion and supplemental brief fail to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

**CONCLUSION**

For the reasons explained above, defendant's motion and supplemental opening brief for compassionate release (Doc. Nos. 40, 43) are denied.

IT IS SO ORDERED.

Dated: **September 9, 2020**

Dale A. Drozd
UNITED STATES DISTRICT JUDGE

[6] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.